FILED

2016 Mar-07  PM 02:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **LAURA NYE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:14-CV-2009-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

## I.   INTRODUCTION

Laura Jean Nye ("Nye") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied Nye's application for a determination of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). Nye timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[1] The court has carefully considered the record and, for the reasons that follow, finds that the decision of the Commissioner

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

is due to be **REVERSED** and **REMANDED.**

II.    <u>**FACTUAL AND PROCEDURAL HISTORY**</u>

Plaintiff was twenty-eight years old at the time of the ALJ's decision (Tr. 31). She had a high school education (Tr. 34). She had past relevant work as an assembler of light boat parts and as a fast food worker (Tr. 23, 44). Plaintiff alleged disability due to low birth weight, hormone deficiency, pins in her hips, learning problems, and depression (Tr. 131).

Nye filed an application for disability insurance benefits, *see* 42 U.S.C. § 420, and an application for Supplemental Security Income, *see* 42 U.S.C. § 1382, on August 27, 2011 (Tr. 54–55, 109-115). These applications were denied initially by the State Agency, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on December 16, 2011. (Tr. 72-73). The hearing was held on February 22, 2013. (Tr. 31-51). The ALJ issued an opinion denying benefits to Nye on March 27, 2013, concluding that she did not have an impairment or a combination of impairments listed in or medically equal to the ones listed in the Regulations. (Tr. 18–20). The ALJ found that Nye retained residual functional capacity to perform work at the medium level of physical exertion and that there would be jobs available in the economy that would accommodate her residual limitations. (Tr. 21–24).

The Appeals Council denied review of the ALJ's decision on August 21, 2014,

making the ALJ's decision the final agency decision on the matter. (Tr. 1–5). Having exhausted all administrative remedies, Nye moved for judicial review in this court pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3) (disability insurance and supplemental security income, respectively) on October 20, 2014. (Doc. 1). The Commissioner responded on February 2, 2015. (Doc. 8). Nye filed a brief in support of her position on March 19, 2015, doc. 11, and the Commissioner submitted her brief on April 20, 2015. (Doc. 12).

III.   <u>**STANDARD OF REVIEW**</u>

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no

presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant

4

is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

> (1)   whether the claimant is currently employed;
>
> (2)   whether the claimant has a severe impairment;
>
> (3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
>
> (4)   whether the claimant can perform his or her past work; and
>
> (5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

V.   **ALJ FINDINGS**

After consideration of the entire record, the ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security
      Act through December 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since
      November 30, 2010 (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: status post bilateral
      hip surgery; borderline intellectual functioning; and depression (20
      C.F.R. 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of
      impairments that meets or medically equals the severity of one of the
      listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1 (20
      C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and
      416.926).

5.    After careful consideration of the entire record, the [ALJ] finds that the
      claimant has the residual functional capacity to perform less than the full
      range of medium work as defined in 20 C.F.R. 404.1567(c) and
      416.967(c). The claimant can lift and/or carry 50 pounds occassionally
      and 25 pounds frequently; can stand and/or walk for 6 hours in an 8-hour
      workday; can sit for 6 hours in an 8-hour workday; can frequently climb
      ramps and stairs, but can never climb ladders, ropes, or scaffolds; can
      frequently balance, stopp, kneel, crouch, and crawl; must avoid all
      exposure to unprotected heights and hazardous machinery; can
      understand and recall simple material, but would show marked
      impairment if her duties and procedures became complex; can executve
      very simple 1, 2, and 3-step commands adequately; can concentrate for
      2-hour periods on simple, repetitive tasks; when initially learning simple,
      new, repeititve tasks, the claimant will need greater than average
      supervision, but by the end of routine training the claimant could
      function at this level without additional oversight; her contact with the
      general public should remain brief, infrequent, and noncontroversial; can
      adapt to simple, direct, supervisory feedback; can adapt to workplace

6

changes which are simple, well-explained, and/or implemented gradually; and can reliably make only very simple, repetitive workplace plans and decisions adequately.

6.    The claimant is capable of performing past relevant work as an assembler, light boat parts. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 17–25).

## VI.    ANALYSIS

The court may reverse a finding of the Commissioner only if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[2] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Nye makes two explicit arguments in favor of reversing the ALJ's decision. (Doc. 10 at 4, 8). First, she argues that "the ALJ failed to properly evaluate plaintiff's

---

[2] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

case pursuant to listing 12.05B and/or 12.05C of the regulations." *id.* at 4, "the ALJ placed undue emphasis on plaintiff's reported daily activities." (*Id.* at 8). This second ground for reversal is subsumed within the first because the ALJ relied upon Nye's daily reported activities to determine that the underlying evidence did not support a diagnosis of retardation.

> A.   <u>Automatic Disability Determination under Step 3</u>

Meeting a listed impairment, found at 20 C.F.R. pt. 404, subt. P, App. 1 results in conclusive determination of disability. *Ambers v. Heckler*, 736 F.2d 1467, 1469–70 (11th Cir. 1984). "The listings set out at 20 CFR pt. 404, subt. P, App. 1 (pt. A) (1989), are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Id.* at 530. "To "meet" a Listing, a claimant must have a diagnosis included in the Listings <u>and</u> must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (emphasis added). Contrary to the Commissioner's suggestion, it does not appear that  the claimant faces a heavier burden of proof under step 3; *see Bowen v. Yuckert*, 492 U.S. 137, 146 & n. 5 (1987), she simply must make the <u>precise</u>

8

showings required in the appendix. *See* 20 C.F.R. § 404.1525(d); *See Zebley*, 493 U.S. at 530.

"To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Further, a claimant must meet "one of the four sets of criteria found in 12.05(A), (B), (C), or (D) in order to show that his impairments are severe enough to meet or equal Listing 12.05." *Perkins v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 870, 872 (11th Cir. 2014) (citing 20 C.F.R. pt. 404, subpt. P, app 1, 12.00(A)).

Both 12.05B[3] and 12.05C[4] entitle a claimant to an automatic determination of disability when her I.Q. is sufficiently low. The claimant is entitled to a presumption that her intelligence has been constant throughout her life. *Gant v. Sullivan*, 773 F. Supp. 376, 382 (S.D. Fla. 1991). An I.Q. score "need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on

---

[3]  12.05B provides that a person satisfies the listed impairment "intellectual disability" when the individual has "a valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. pt. 404, subpt. P, App. 1.

[4]  12.05C provides that a person satisfies the listed impairment "intellectual disability" when the individual has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

the claimant's daily activities and behavior." *Lowery*, 979 F.2d at 837 (citing *Popp*

*v. Heckler*, 779 F.2d 1997, 1499 (11th Cir. 1986)).

The court concludes that the ALJ's determination in step three was not based

on substantial evidence, and there are two related reasons for this. First, the ALJ

apparently substituted the opinions of the state consultants for the opinions of the

other doctors in the record. Second, two of the doctors in the record assigned GAF

scores to Nye, which the ALJ conclusorily rejected. This was error.[5]

B.   The ALJ Erred by Failing to Discuss Dr. Confer, Dr. Haney, and Dr. Rogers's Opinions

As support for her conclusion that the medical record as a whole did not support

a finding that Nye has deficits in adaptive functioning before age 22, the ALJ cited the

Psychiatric Review Technique Forms completed state consultants Eugene Fleece, tr.

379–92, and Robert Estock, tr. 334–347. (*See* Tr. 20). They do not appear to have

examined Nye; rather, it seems that they evaluated her record and concluded that she

had "moderate restrictions in daily living,"[6] a position to which the ALJ apparently

gave great weight (although she offered no discussion of the weight given these

---

[5]  Because the ALJ did not determine whether Nye's I.Q. fell under the B or C criteria, there is no need for the court to make a decision as to which set of criteria it falls under.

[6]  Estock's report did incorporate some of one doctor's statements: "she does not appear to meet a lot of demands of adult living as she continues to live at home and has never dated and does little with herself during the day." (Tr. 346). However, the ALJ did not discuss this portion of Estock's report.

statements).

The ALJ did not discuss, however, the impressions of the three consultative physicians—Dr. Rogers, Dr. Haney, and Dr. Confer—who examined Nye and whose conclusions undermine the ALJ's determination that Nye has no deficit in adaptive functioning. Each of these doctors estimated that Nye was, in fact, mentally retarded. (Tr. 308, 315, 321).

Dr. Rogers, tr. 304–309  concluded that her "ability to understand, remember, and carry out instructions and respond appropriately to supervision, co-workers, and work pressures in a work setting would be moderately impaired." (Tr. 306). He described her mental impairment as moderate, having a lifelong history of mental retardation. (Tr. 308). As evidence in support of this, he noted that she was laid off from her previous work because she could not keep up. (Tr. 305). He also concluded that she could function independently, although the quality of her daily activities is below average. (Tr. 307).

Dr. Haney, tr. 315–16, administered the test showing her I.Q. to be 59. (Tr. 315). He described her as mildly mentally retarded. (Tr. 316).

Dr. Confer, tr. 317–22, "anticipate[d] this individual to have life-long limited ability to learn, read, or write consistent with mild mental retardation." (Tr. 321). Further, Dr. Confer concluded that she "does not appear to be able to meet a lot of the

demands of adult living as she continues to live at home, has never dated, and does little with herself during the day." (Tr. 322). He reported that she would be unable to adequately manage her financial benefits. (*Id.*). Dr. Confer expressed concern that she may have been "laid off" of her previous job because of her trouble keeping up. (Tr. 318).

As evidence supporting his conclusions, Dr. Confer reported that when asked to transcribe "The young woman went to town.," she writes "young woman to town" with neither capitalization nor punctuation. (Tr. 317). She has difficulty reading and confuses certain words. (*Id.*). As to her ability to manage money, she responds "no clue" to a question asking how much change she would receive from $5.00 after purchasing three items costing 50 cents each. (Tr. 320). When asked how she knows she receives correct change from a store, she responded, "I just trust them." (*Id.*). Nye indicated that she does not know how she would allocate $1,000 in income each month. (*Id.*). She is also unable to understand idioms, has difficulty stating the relationship between certain objects; i.e., a book and a television, and cannot explain why the state requires licenses to drive. (Tr. 319–20).

The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). This applies to consulting physicians as well as treating

physicians. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (the ALJ must assign a weight to each item of evidence). The ALJ's failure to discuss these three opinions was error, and the fact that they undermine her conclusion means the errors are not harmless. The case must be remanded for her to fully consider these opinions.

C.  The ALJ Inadequately Explained her Decision To Assign Little Weight to the GAF Scores

An ALJ is of course free to discredit a given claimant's GAF[7] score. He or she must, however, tailor the reasoning for doing so to facts specific to that claimant – that is, with references to the claimant's appearance, activities, medical history, or other parts of the case record. *See Davis v. Astrue*, 287 F. App'x 748, 758 (11th Cir. 2008); *McLoud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006). The law does not permit an ALJ to disregard a GAF score without at least such a minimal, case-specific explanation. This is particularly the case where the score suggests serious mental illness.

---

[7]  The Global Assessment of Functioning, or GAF Scale, is a numeric scale that mental health physicians and doctors use to rate the occupational, psychological, and social functioning of adults. *The Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) ("DSM-IV"). According to the DSM-IV, a GAF of 50 indicates either (1) "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)" or (2) "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.; accord Davis v. Astrue*, 287 F. App'x 748, 758 (11th Cir. 2008) (unpublished) (per curiam) ("[A] GAF of 50 indicates either serious symptoms or serious impairments in social, occupational, or school functioning.").

Here, Nye's GAF scores were 51, reflecting moderate symptoms from mental impairments, and 50, reflecting serious symptoms from mental impairments. These scores were the results (and only discussion of) Nye's examination by Dr. Rogers and Dr. Confer, respectively. Rather than explaining why these scores were either inconsistent with the medical record or inconsistent with the doctor's own treatment notes, *see Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x. 869 (11th Cir. 2011), the ALJ offered a blanket rejection of GAF scores:

> While GAF scores are an attempt to get a reading of the clinician's assessment of the patient 's functioning and are useful in planning treatment, the numbers assigned are rather vague and do not readily correspond to how the Social Security Administration assesses disability in terms of severity requirements. Therefore, the undersigned assigns little weight to the claimant's GAF scores.

(Tr. 19).

Considering the Eleventh Circuit's repeated admonition that GAF scores must be considered and a weight assigned to them, *see Davis*, 287 F. App'x at 758; *McLoud* 166 F. App'x at 418, such a blanket rejection of all GAF scores will not do. Because it is unclear what weight was given to the medical opinions from which these scores originated, and because the ALJ offered merely a generalized rejection of GAF scores as suitable evidence, remand is warranted for the ALJ to explicate her consideration of the GAF scores, the doctors' opinions, or both. And preferably both, as the opinions and scores reflect the same underlying evidence.

14

## VII.   <u>Conclusion</u>

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the Commissioner did not apply proper legal standards in reaching her final decision. Accordingly, the decision will be reversed and remanded by separate order.

**DONE** and **ORDERED** this 7th day of March, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge